55549. C. F. I. CONSTRUCTION COMPANY v. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA.

ARGUED MARCH 2, 1978 — DECIDED MARCH 14, 1978 —
REHEARING DENIED MARCH 30, 1978 — CERT. APPLIED FOR.

*William V. Hall, Jr., Grace E. Evans,* for appellant.
*Arthur K. Bolton, Attorney General, Michael E. Hobbs, Assistant Attorney General, G. Thomas Davis, Special Assistant Attorney General,* for appellee.

DEEN, Presiding Judge.

■ The transfer of the appeal to this court eliminates those enumerations of error attacking the constitutionality of Ga. L. 1976, p. 452, apparently on the ground that the record does not show they were properly raised in the trial court.

■ Under the law as it existed on December 4, 1975, "the Board of Regents of the University System of Georgia is a person in law, able to sue and be sued, and . . . it does not have sovereign immunity in a suit for breach of the express terms of a contract which it is authorized to and has entered into." *Busbee v. University Professors,* 235 Ga. 752, 758 (221 SE2d 437) (1975).

By Ga. L. 1976, p. 452, effective March 18, 1976 (Code Ann. § 32-101.1) the legislature enacted the following: "The applicability of the doctrine of 'sovereign immunity' to the Board of Regents of the University System of

Georgia is hereby reaffirmed, except to the extent that the General Assembly of Georgia may hereafter expressly provide. As used in this section the term 'Board of Regents of the University System of Georgia' shall include the 'Regents of the University System of Georgia.' " This suit was filed February 18, 1977, after the Act took effect.

That Act also struck down a part of a prior Act giving to the predecessor of the Board of Regents (and thus impliedly to the board) the right to sue and be sued, under the authority of which the *Busbee* case had held that a waiver of sovereign immunity existed. Subsequently to this legislative innovation, this court in *Goolsby v. Regents of the University System,* 141 Ga. App. 605 (234 SE2d 165) (1977) and the closely related case of *Meadows Motors v. Dept. of Administrative Services,* 141 Ga. App. 224 (233 SE2d 14) (1977) has held that the mere activity of the state or one of its political subdivisions in entering into an otherwise valid contractual obligation with one of its citizens is not (as had previously been held in *Regents of the University System v. Blanton,* 49 Ga. App. 602 (1) (176 SE 673) (1934)) an implied waiver of its cloak of immunity so as to preclude a suit against it for a breach of its contract. These cases also dispose of the contention that, since the contract was entered into prior to the Act of 1976, application of that law would be retroactive. As stated in *Dept. of Human Resources v. Briarcliff Haven, Inc.,* 141 Ga. App. 448, 450 (233 SE2d 844) (1977): "It is irrelevant whether the claim against the state, its agencies or political subdivisions sounds in tort or contract" and there is no longer any such thing as an *implied* waiver. See also the *Meadows Motors* case, supra, p. 226.

■ While what has been said above disposes of the exact issue (whether the Board of Regents may refuse to pay an indebtedness on which it is contractually obligated on the ground of sovereign immunity), it should be further pointed out that with the passage of a constitutional amendment (Code § 2-3401) ratified Nov. 5, 1974, empowering the legislature to create a State Court of Claims to take care of such disputes, and with the continued inaction of the legislature from that time to this to act upon this constitutional authorization, the result

has been to achieve for the doctrine of immunity in Georgia a constitutional status and also an impregnable defense. *Clark v. State of Ga.,* 240 Ga. 188 (240 SE2d 5) (1977); *Health Facility Investments, Inc. v. Ga. Dept. of Human Resources,* 238 Ga. 383 (233 SE2d 351) (1977). "Because of the adoption of this constitutional amendment, and it is now effective as a part of our Constitution, we hold that the immunity rule as it has heretofore existed in this state cannot be abrogated or modified by this court." *Azizi v. Bd. of Regents of the University System of Ga.,* 233 Ga. 487 (212 SE2d 627) (1975). We have thus receded through over a hundred years of jurisprudence back to 1860, when it was stated in *Ga. Military Institute v. Simpson,* 31 Ga. 273, 277: "But whoever contracts with the State trusts to the good faith of the State, unless the State sees fit to disrobe itself of its sovereignty. . ."

In plain English this means that a citizen of Georgia who contracts with the state or one of its governmental subdivisions may find that contract not worth the paper it is written on unless the political subdivision concerned in its infinite benevolence sees fit to honor its obligations, or unless there is an express waiver of sovereign immunity incorporated in the document. This view of the power of states has a long and elevated history; it was the basis of the divine right of kings and as such has frequently been referred to as a part of our common law heritage. It is nevertheless not a position adopted by this country at the time of the War of Independence, and it is not a position widely adopted in our sister states today. That the doctrine of governmental immunity from suit is currently in general disfavor, see 62 ALR2d 1211 (18) and cits., including Taylor v. N. J. Highway Authority, 126 A2d 313; Meens v. State Board of Ed., 127 Mont. 515 (267 P2d 981); Lyon & Sons, Inc. v. N. C. State Board of Ed., 238 N. C. 24 (76 SE2d 553); O'Neill v. State Hwy. Dept., 50 N. J. 307 (235 A2d 1). Nevertheless, under the present status of Georgia law, this plaintiff cannot recover against the Board of Regents of the University System for a breach of contract by the latter in refusing to pay it for material furnished and services performed.

4. Notwithstanding the fact that we have held the

defense of sovereign immunity good as against the contractual obligation, we must consider the further action of the trial court in dismissing the petition on this ground. "Under the Civil Practice Act . . . a motion to dismiss a complaint for failure to state a claim should not be granted unless the averments in the complaint disclose with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proved in support of the claim." *Harper v. DeFreitas,* 117 Ga. App. 236 (1) (160 SE2d 260) (1968). "The doctrine of sovereign immunity is not a bar to the enforcement of constitutional rights. . ." *Goolsby v. Regents of the University System,* 141 Ga. App. 605, 609, supra. Counties, like the Board of Regents, are governmental entities ordinarily only subject to suit where made so by statute, but again, almost a century ago, our Supreme Court recognized that that fact is not a bar to an action involving a constitutional right. Such a right is that of eminent domain, Art. I, Sec. III, Par. I of the Constitution of 1976 (Code § 2-301) providing: "Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid." In *Smith v. Floyd County,* 85 Ga. 420, 424 (11 SE 850) (1890) it was held: "The violation by a county of a constitutional right of the citizen must by necessary implication raise a cause of action in favor of the citizen against the county, unless some means of redress other than suit has been afforded by the legislature." In *Smith* the county in the course of certain public work in the construction of a bridge damaged a lot belonging to the plaintiff by making it inaccessible to the street. This the court held to be a taking or damaging within the purview of eminent domain because, under the Constitution of 1877 (the same language above quoted) "Cities, counties and all other public organizations are denied any power or right to cause such damages for public purposes without making compensation. In this respect they are all upon an equal footing. . . " Id., p. 425. In *Langley v. City Council of Augusta,* 118 Ga. 590, 598 (45 SE 486) (1903), speaking of municipal officers exercising a governmental function in the location of a sewer, the court held: "These officers may also, if it is necessary, take or damage property of private citizens in constructing the

system of sewerage and drainage, but adequate compensation must be paid for property so taken or damaged. The same is true of the construction of any public improvement." To the same effect see *Barfield v. Macon County,* 109 Ga. 386 (34 SE 596) (1899); *Terrell County v. York,* 127 Ga. 166 (1) (56 SE 309) (1906). We emphasize that these decisions of the Supreme Court in regard to counties are based on the same rationale as the present suits which invoke the doctrine of sovereign immunity, because the only reason for prohibiting ordinary actions against counties and other political subdivisions was based on their governmental status, which of course is the umbrella raised in the present case. This was early spelled out in *Haygood v. Justices of the Inferior Court,* 20 Ga. 845, 846, referring to whom it was held: "If they or the county are a corporation, or a *quasi* corporation, it is a public, and not a private corporation — it is one instituted for the purposes of government. Such a body is not liable to an action for non-feasance" or, it should be added, for misfeasance, except in special circumstances. An action for the value of private property taken or damaged for a public purpose is not, in the ordinary parlance, either a tort or a contract; it is simply a constitutional right which the citizen may not be denied. See also *Millwood v. DeKalb County,* 106 Ga. 743, 747 (32 SE 577) (1899); *State Hwy. Dept. v. Parker,* 75 Ga. App. 237, 243 (43 SE2d 172) (1947).

The same law was applied in *Elbert County v. Brown,* 16 Ga. App. 834 (7) (86 SE 651) (1915), where some stone on the plaintiff's premises was seized by county agents for use on the county roads. "The fact that the county commissioners, with knowledge that their agent charged with the working of the roads had negligently or by mistake taken private property without compensation and had used it in improvement of a public road, nevertheless retained possession of the property will authorize the inference that they ratified the original taking, and will render the county liable for the value of the property so taken," under eminent domain principles. In the same way, if the Board of Regents here has in fact taken goods and services provided by the plaintiff and put them to a public use as alleged, it has violated a

constitutional right of the plaintiff and the doctrine of sovereign immunity does not impair his right to damages for the value of the property so taken, although it precludes him from suing on the contract.

This constitutional right has been recognized throughout the history of our state jurisprudence and as recently as *City of Rome v. Turk,* 235 Ga. 223 (2) (219 SE2d 97) (1975), where the Supreme Court held in a nuisance case for the malfunction of a drainage system: "The petition also alleged a wilful trespass for which the plaintiffs would be entitled to compensation for the taking or damaging of private property." This is because the eminent domain *taking or damaging* provisions of our Constitution are self-executing. See *Woodside v. City of Atlanta,* 214 Ga. 75, 80 (103 SE2d 108) (1958); *Bowers v. Fulton County,* 221 Ga. 731, 738 (146 SE2d 884) (1966); *City of Gainesville v. Loggins,* 224 Ga. 114 (160 SE2d 374) (1968). They need no legislative sanction to give them efficacy and, as stated in *Bowers,* p. 738, supra, the provision "is too plain to be misunderstood, and is not to be violated or evaded by the legislature or the courts." See also *Rheberg v. Grady County,* 27 Ga. App. 578 (1) (109 SE 542) (1921); *Habersham County v. Cornwall,* 38 Ga. App. 419 (1) (144 SE 55) (1928); *State Hwy. Board v. Ward,* 42 Ga. App. 220 (1) (155 SE 384) (1930); *Page v. Washington County,* 48 Ga. App. 791 (173 SE 868) (1934).

We accordingly conclude that although the plaintiff cannot bring an action against the Board of Regents based on its contract with that body to furnish it labor and materials for a public building, nevertheless, the defendant cannot accept and retain such property without allowing the plaintiff just and adequate compensation. Since we cannot at this stage say that the plaintiff could in no event recover under the pleadings in the record before us, the dismissal of the complaint is reversed.

*Judgment reversed. Smith and Banke, JJ., concur.*