S93A1226, S93X1227. STATE BOARD OF EDUCATION et al. v. DRURY et al.; and vice versa.
S93A1228, S93X1230. STATE BOARD OF EDUCATION et al. v. JONES; and vice versa.
(437 SE2d 290)

CARLEY, Justice.

Acting pursuant to OCGA § 20-2-240 (a), appellant-defendant State Board of Education (Board) promulgated rules and regulations whereby the teachers of this state would initially be issued non-renewable three-year teaching certificates and, in order for them to receive renewable teaching certificates, they would be required, during the three-year period, to pass the Teachers' Performance Assessment Instrument (TPAI). In *Dept. of Ed. v. Kitchens,* 193 Ga. App. 229 (387 SE2d 579) (1989), however, those rules and regulations pursuant to which the Board had implemented the TPAI were held to have been invalidly promulgated. Appellee-plaintiffs are teachers who at one time held the non-renewable teaching certificates, but who were subsequently denied the renewable teaching certificates due to their failure to have passed the TPAI. After *Kitchens,* all those teachers, including appellees, who had failed to pass the TPAI were deemed to be eligible to return to the teaching profession and their non-renewable teaching certificates were restored to them. Appellees, however, sought additional relief by filing the instant action seeking to recover monetary damages against the Board and the individual Board members. According to the allegations of their complaint, appellees were entitled to recover damages because their federal and state constitutional rights had been violated when they were originally denied re-

newable teaching certificates based upon their failure to have passed the TPAI.

After discovery, cross-motions for summary judgment as to liability were filed. The trial court granted summary judgment in favor of appellees against the Board, but granted summary judgment in favor of the individual Board members against appellees. In Case Nos. S93A1226 and S93A1228, the Board appeals from the grant of summary judgment in favor of appellees and, in Case Nos. S93X1227 and S93X1230, appellees cross-appeal.

*Case Nos. S93A1226 and S93A1228*

1. Under the doctrine of sovereign immunity, the state cannot be sued without its consent.

> "It is an established principle of jurisprudence in all civilized nations that the sovereign can not be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a defendant in a suit by individuals, or another State. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it."

*Musgrove v. Ga. R. &c. Co.*, 204 Ga. 139, 159 (49 SE2d 26) (1948). In this state, sovereign immunity has constitutional status and that doctrine "cannot be abrogated . . . by this court." *Sheley v. Bd. of Public Ed. for the City of Savannah &c.*, 233 Ga. 487, 488 (212 SE2d 627) (1975).

Accordingly, in granting summary judgment in favor of appellees as to the Board's liability for damages, the trial court was necessarily compelled to rely only upon theories of recovery which would not be barred by the doctrine of sovereign immunity. One such theory was that appellees were entitled to recover damages pursuant to the eminent domain provision of our constitution. "[P]rivate property shall not be taken . . . for public purposes without just and adequate compensation being first paid." Georgia Const. of 1983, Art. I, Sec. III, Par. I (a). Since the recovery of just and adequate compensation for private property which is taken for public purposes is itself an express constitutional right, sovereign immunity is not a viable bar to an action to enforce that right. See *Smith v. Floyd County*, 85 Ga. 420, 423 (2) (11 SE 850) (1890); *C.F.I. Constr. Co. v. Bd. of Regents*, 145 Ga. App. 471 (243 SE2d 700) (1978).

In order for damages to be recoverable by appellees under an eminent domain theory, however, some element of their "private property" must have been "taken" from them for a public purpose. The "private property" which appellees contend was "taken" from them for a public purpose was their ability to engage in the teaching profession in this state. "Where the [s]*tate confers a license* to engage in a profession, trade, or occupation, not inherently inimical to the public welfare, such license becomes a valuable right. . . ." (Emphasis supplied.) *Leakey v. Ga. Real Estate Comm.*, 80 Ga. App. 272, 273 (55 SE2d 818) (1949). Thus, a license to engage in a profession, *once it has been issued*, becomes "a property right. . . ." *Ga. Real Estate Comm. v. Horne*, 141 Ga. App. 226, 231 (3) (233 SE2d 16) (1977).

> *Once licenses are issued, . . .* their *continued possession* may become essential in the pursuit of a livelihood. *Suspension of issued licenses* thus involves state action that adjudicates important interests of the licensees.

(Emphasis supplied.) *Bell v. Burson*, 402 U. S. 535, 539 (91 SC 1586, 29 LE2d 90) (1971).

It is undisputed, however, that appellees had been granted *only* non-renewable teaching certificates and that those certificates were *not* taken from appellees. Appellees' non-renewable teaching certificates *expired* after three years and, at that time, they simply could not continue to teach in this state because, having failed to pass the TPAI, they were deemed to be *ineligible* for renewable teaching certificates. Accordingly, appellees' complaint is *not* that any teaching certificate was *taken* from them, but that *renewable* teaching certificates were *denied* to them. Compare *Bell v. Burson*, supra; *Ga. Real Estate Comm. v. Horne*, supra; *Leakey v. Ga. Real Estate Comm.*, supra.

> "Property interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. . . . To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than an unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." [Cit.]

*Pace v. Smith*, 248 Ga. 728, 732-733 (3) (286 SE2d 18) (1982). Thus, appellees had *no* property interest in the unobtained renewable teaching certificates, absent their compliance with the regulatory re-

quirements for securing such certificates.

> An individual does not have a constitutional right to practice a . . . profession since such a right is subordinate to the state's right to regulate such a profession. [Cits.]

*Brown v. State Bd. of Examiners of Psychologists,* 190 Ga. App. 311, 312 (1) (378 SE2d 718) (1989).

Of course, appellees were at all times free to bring suit to *remove* any regulatory impediment, including the requirement that they pass the TPAI, which they might contend was unlawfully or unconstitutionally preventing them from *obtaining* a certificate to engage in the teaching profession. A State cannot *exclude* a person from the practice of . . . any . . . occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment. (Emphasis supplied.) *Schware v. Bd. of Bar Examiners of New Mexico,* 353 U. S. 232, 238-239 (77 SC 752, 1 LE2d 796) (1957). See also *State Health Planning Agency v. Coastal Empire Rehabilitation Hosp.,* 261 Ga. 832 (412 SE2d 532) (1992); *Baranan v. State Bd. of Nursing Home Admrs.,* 143 Ga. App. 605 (1) (239 SE2d 533) (1977).

In the instant case, however, appellees do not seek the removal of any regulatory impediment to their practice of the teaching profession, that regulatory impediment having already been removed by virtue of the holding in *Kitchens.* Appellees seek monetary *damages* because an invalid and allegedly unconstitutional regulatory impediment to their practice of the teaching profession did exist at one time. The state has provided a remedy for those, such as appellees, who contend that their rights have been infringed by the rules and regulations of state departments and agencies.

> The validity of any rule may be determined in an action for declaratory judgment when it is alleged that the rule or its threatened application interferes with or impairs the legal rights of the petitioner. A declaratory judgment may be rendered whether or not the petitioner has first requested the agency to pass upon the validity of the regulation in question.

OCGA § 50-13-10 (a). It is thus clear that the state has prescribed the terms and conditions on which it consents to be sued based upon the alleged invalidity or unconstitutionality of the rules and regulations of its departments and agencies. Pursuant to OCGA § 50-13-10, the state has "consented" to be sued and has waived its sovereign immunity *only* as to declaratory judgment actions wherein the rules and regulations of its departments and agencies are *challenged.* See

*Irvin v. Woodliff*, 125 Ga. App. 214, 216 (1) (186 SE2d 792) (1971). Appellees did not pursue this available remedy. Instead, they waited until after the Board's rules and regulations had already been declared invalid in *Kitchens* and then brought the instant action seeking *damages*. The state has *not* "consented" to be sued for *damages* based upon the alleged invalidity or unconstitutionality of the rules and regulations promulgated and implemented by its departments and agencies. Appellees obtained all the relief to which they were entitled when the rules and regulations pursuant to which the TPAI had been implemented were held in *Kitchens* to have been invalidly promulgated and, as the result, their eligibility to engage in the teaching profession in this state was restored to them by the return of their non-renewable teaching certificates. Since appellees had no property interest in the renewable certificates which were never issued to them, it follows that the trial court erred in holding that appellees could also recover damages pursuant to the "taking" provision of Art. I, Sec. III, Par. I (a) of our Constitution.

2. In granting appellees' motion for summary judgment as to the Board's liability for damages, the trial court also cited *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (91 SC 1999, 29 LE2d 619) (1971).

> *Bivens* established that the victims of a constitutional violation by a *federal agent* have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.

(Emphasis supplied.) *Carlson v. Green*, 446 U. S. 14, 18 (II) (100 SC 1468, 64 LE2d 15) (1980). Obviously, the Board is *not* a federal agent. It is a *state agency*. Accordingly, *Bivens* does not provide a viable theory whereby appellees can recover damages against the Board.

It is 42 USC § 1983 that constitutes the controlling federal authority on the right of a citizen to recover damages for an alleged deprivation of his federal constitutional rights under color of state law. However, appellees did not allege a § 1983 claim in their complaint. *Amdahl Corp. v. Ga. Dept. of Admin. Svcs.*, 260 Ga. 690, 698 (4) (398 SE2d 540) (1990). Moreover, even if they had, such a claim would not be viable. Section 1983 authorizes a recovery of damages against a "person" who, under color of state law, deprives another of his federal constitutional rights.

> [I]n enacting § 1983, Congress did not intend to override well-established immunities or defenses under the common law. . . . The doctrine of sovereign immunity was a familiar doctrine at common law. . . . We cannot conclude that

§ 1983 was intended to disregard the well-established immunity of a State from being sued without its consent.

*Will v. Mich. Dept. of State Police*, 491 U. S. 58, 67 (109 SC 2304, 105 LE2d 45) (1989). Accordingly, the Board is not a "person" against whom a § 1983 claim for damages will lie.

[T]he intent of Congress to provide a remedy for unconstitutional state action does not without more include the sovereign States among those persons against whom § 1983 actions would lie. Construing § 1983 as a remedy for "official violation of federally protected rights" does no more than confirm that the section is directed against state action — action "under color of" state law. It does not suggest that the State itself was a person that Congress intended to be subject to liability.

*Will v. Mich. Dept. of State Police*, supra at 68.

3. Neither the trial court nor this court is free to fashion a *Bivens* remedy under state law, whereby victims of invalid and allegedly unconstitutional rules and regulations promulgated and implemented by a state department or agency have a right to recover *damages* against the state in a state court despite the absence of any express authority conferring such a right. As previously noted, sovereign immunity has constitutional status in this state and that doctrine cannot be abrogated by the judiciary. *Sheley v. Bd. of Public Ed. for the City of Savannah &c.*, supra. Although a citizen may be entitled to seek enforcement of his constitutional rights, the means of that enforcement does not necessarily take the form of a recovery of damages against the state. There is express constitutional authority for the right to recover just and adequate compensation from the state when private property is taken for public purposes. See *Smith v. Floyd County*, supra; *C.F.I. Constr. Co. v. Bd. of Regents*, supra. There is, however, no express constitutional right to recover damages against the state based upon the invalidity or unconstitutionality of the rules and regulations promulgated and implemented by its departments and agencies. Accordingly, unless and until there is a waiver of the doctrine of sovereign immunity as provided in Art. I, Sec. II, Par. IX of our Constitution, the judiciary is compelled to hold that the victims of such state rules and regulations have no viable state claim for damages and that they must be relegated to the express remedies which do exist, such as initiation of a declaratory judgment action pursuant to OCGA § 50-13-10.

4. Appellees have no viable damage claim against the Board which would not be barred by the doctrine of sovereign immunity. It

follows that the trial court erred in granting summary judgment in favor of appellees and in denying the Board's motion for summary judgment.

> The right of individuals to sue a State[, as opposed to a person], in either a federal or a state court, cannot be derived from the Constitution or laws of the United States. It can come only from the consent of the State. [Cits.]

*Palmer v. Ohio*, 248 U. S. 32, 34 (39 SC 16, 63 LE 108) (1918).

5. The Board's remaining enumerations of error are moot.

### Case Nos. S93X1227, S93X1230

6. It necessarily follows that, as against the individual Board members, appellees likewise have no viable claim for damages under an eminent domain or *Bivens* theory. Appellees urge, however, that they do have a viable claim for damages under § 1983 and that the trial court erred, therefore, in granting summary judgment in favor of the individual Board members.

As noted, appellees did not allege a § 1983 claim in their complaint. Moreover, even if they had, such a claim would not be viable as against the individual Board members in their official capacities. *Amdahl Corp. v. Ga. Dept. of Admin. Svcs.*, supra at 698 (4).

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. [Cit.] As such, it is no different from a suit against the State itself. [Cits.] We see no reason to adopt a different rule in the present context, particularly when such a rule would allow [claimants] to circumvent congressional intent by a mere pleading device. We hold that neither a State nor *its officials* acting in their official capacities are "persons" under § 1983.

(Emphasis supplied.) *Will v. Mich. Dept. of State Police*, supra at 71.

> Of course a state official in his or her official capacity, when sued for *injunctive relief*, would be a person under § 1983 because "official-capacity actions for prospective relief are *not* treated as actions against the State." [Cits.]

(Emphasis supplied.) *Will v. Mich. Dept. of State Police*, supra at 71, fn. 10.

Thus, although appellees could not have sued the Board under

§ 1983, they could have sued the individual Board members in their official capacities and sought injunctive relief against enforcement of the rules and regulations pursuant to which the TPAI had been promulgated and implemented. However, appellees did not do so. Instead, they waited until after the Board's rules and regulations had already been invalidated in *Kitchens* and then brought the instant suit seeking damages. Such a claim for damages against the individual Board members in their official capacities is not viable under § 1983.

7. Appellees urge that they have a viable § 1983 claim for damages against the individual Board members in their personal capacities. See *Hafer v. Melo*, 502 U. S. ___ (112 SC 358, 116 LE2d 301) . (1991).

As noted, however, appellees did not allege a § 1983 claim in their complaint. In any event, the trial court held that the individual Board members would be immune from any liability for damages under § 1983 and we find no error in that holding. See *Anderson v. Creighton*, 483 U. S. 635 (107 SC 3034, 97 LE2d 523) (1987); *Wood v. Strickland*, 420 U. S. 308 (95 SC 992, 43 LE2d 214) (1975). State "officials sued in their personal capacities . . . may assert personal immunity defenses such as objectively reasonable reliance on existing law. [Cit.]" *Hafer v. Melo*, supra at ___ (II).

> On summary judgment, the [trial] judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

*Harlow v. Fitzgerald*, 457 U. S. 800, 818 (IV) (B) (102 SC 2727, 73 LE2d 396) (1982). No constitutional deficiencies in the Board's promulgation and implementation of the TPAI had ever been found to exist prior to the instant case. Accordingly, the trial court did not err in its determination that the purported constitutional deficiencies that it found to exist in the context of the instant case had *not* been "clearly established" at the time that appellees were denied renewable teaching certificates. It is urged that, even if the individual Board members did not previously "know" of the TPAI's purported constitutional deficiencies, they nevertheless "knew" that the TPAI had not been properly promulgated and implemented pursuant to the Administrative Procedure Act (APA). However, the Board's determination that it was exempt from the APA was not "clearly established" to be erroneous until the decision in *Kitchens*, which decision was rendered

*after* appellees had been denied renewable teaching certificates. Moreover, the Board's failure to promulgate and implement the TPAI pursuant to the APA would not violate appellees' *constitutional* rights so as to authorize a claim under § 1983. Appellees have no constitutional right to have the Board's rules and regulations promulgated and implemented pursuant to the APA. The failure to promulgate and implement the TPAI pursuant to the APA was a mere violation of that Act, not a constitutional violation.

Appellees contend that, even if the individual Board members have a viable immunity defense to liability for damages under § 1983, the trial court nevertheless erred in basing its grant of summary judgment on that defense. According to appellees, that defense was procedurally waived because it had not been specifically pled in the individual Board members' answers. Under the pleading practice of this state, however, immunity is *not* a defense which must be specifically pled under OCGA § 9-11-108 (c). See generally *Wright Assoc. v. Rieder*, 247 Ga. 496, 500 (2) (277 SE2d 41) (1981); *Kelleher v. State of Ga.*, 187 Ga. App. 64 (1) (369 SE2d 341) (1988). Moreover, even if it were, there would still be no error in the trial court's instant grant of summary judgment. It is apparent that the trial court has held that, assuming that appellees' complaint could be so broadly construed as to state a § 1983 claim, the evidence of record would nevertheless entitle the individual Board members to summary judgment based upon their immunity from § 1983 liability for damages. There would be no procedural error in this ruling. See *Phillips v. State Farm Mut. Auto. Ins. Co.*, 121 Ga. App. 342, 345 (2) (173 SE2d 723) (1970).

8. Appellees further urge that they have a viable state claim for damages against the individual Board members in their individual capacities.

The sole basis for the asserted liability as to the individual Board members relates to their promulgation and implementation of those Board rules and regulations pursuant to which appellees were denied renewable teaching certificates. In promulgating those Board rules and regulations, the individual Board members were collectively exercising the discretionary authority granted to them by OCGA § 20-2-240 (a). In so doing, they may have erroneously determined that the Board was exempt from the procedural requirements of the APA or made other erroneous determinations regarding the ultimate legality of the TPAI as an enforceable basis for determining teacher certification. Pursuant to 42 USC § 1983 or OCGA § 50-13-10, such erroneous determinations would be subject to rectification in a legal challenge to the rules and regulations themselves. Such erroneous determinations will not, however, serve to afford appellees a viable claim for *damages* against the individual Board members. It is

"well established that 'where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him, he is sometimes called a quasi-judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as a result of an erroneous decision; provided the acts complained of are done within the scope of the officer's authority, and without wilfulness, malice, or corruption.' " These discretionary acts ". . . lie midway between judicial and ministerial ones. The name of the public officer or officers is immaterial, and the question depends on the character of the act. If the act done for which recovery is sought is judicial or quasi-judicial in its nature, the officer acting is exempt from liability."

(Emphasis omitted.) *Hennessy v. Webb*, 245 Ga. 329, 330-331 (264 SE2d 878) (1980).

There are no allegations that the individual Board members acted wilfully, maliciously or corruptly. The promulgation and implementation of the Board's rules and regulations were acts which were clearly within the scope of their discretionary authority. It necessarily follows that they have governmental immunity from any liability for damages in their individual capacities and that the trial court correctly granted summary judgment in their favor.

9. Appellees' remaining enumeration of error is moot.

*Judgment reversed in Case Nos. S93A1226 and S93A1228. Judgment affirmed in Case Nos. S93X1227 and S93X1230. All the Justices concur; Benham, J., not participating.*

DECIDED OCTOBER 12, 1993 —
RECONSIDERATION DENIED NOVEMBER 19, 1993.

*Michael J. Bowers, Attorney General, Kathryn L. Allen, Dennis R. Dunn, Senior Assistant Attorneys General*, for appellants.
*Zimring & Ellin, Jonathan Zimring*, for appellees.