DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 24, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-10126
Non-Argument Calendar

_____

D. C. Docket No. 05-01395-CV-JOF-1

NERESSA CARR,

Plaintiff-Appellant,

versus

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF
GEORGIA,
d.b.a. Kennesaw State University,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 24, 2007)**

Before BIRCH, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

The plaintiff, Neressa Carr, appeals the district court's grant of summary judgment in favor of the defendant, the Board of Regents of the University System of Georgia, on all of her claims. Carr alleges that the Board: (1) abridged her rights to due process and equal protection, in violation of 42 U.S.C. § 1983; (2) racially discriminated against her, in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; and (3) breached its contract with her, in violation of state law. She filed suit in the Superior Court of Fulton County, Georgia, seeking compensatory damages. The Board removed the matter to the United States District Court for the Northern District of Georgia.

Carr, an African-American nursing student, was suspended for two years from Kennesaw State University following allegations that she sold four stolen textbooks back to the university bookstore, in violation of Sections III F and III G of the Kennesaw student code of conduct. The complaint alleges that the Board failed to follow the proper procedures at the disciplinary hearing and imposed the two-year suspension because of her race.

The district court concluded, in granting the Board's motion for summary judgment, that: (1) Carr's § 1983 claims were barred because the Board is not a "person" subject to suit under that statute; (2) Carr's Title VI claim raised no genuine issue of material fact because she failed to present any evidence from

which a reasonable jury could conclude that the defendant's legitimate, non-discriminatory reasons for her suspension were a pretext for intentional discrimination; and (3) Carr's state law contract claim raised no genuine issue of material fact because she failed to present any evidence from which a reasonable jury could conclude that the defendant breached a contract with Carr. We affirm the district court's grant of summary judgment for the Board on all of Carr's claims.

We review the grant of a motion for summary judgment de novo. Cruz v. Publix Super Mkts., Inc., 428 F.3d 1379, 1382 (11th Cir. 2005). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

We "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in [her] favor." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (quotation omitted). In opposing the summary judgment motion, the non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading, but the [non-movant's] response, by affidavits or as otherwise provided in this rule, must set forth specific

facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000).

Carr first contends that the district court erred in granting summary judgment for the Board on her § 1983 due process and equal protection claims because, according to her, there were genuine issues of material fact. Specifically, Carr argues that the procedures used to determine her punishment denied her due process, and that the two-year suspension denied her equal protection because its duration was based on her race.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The plaintiff in a § 1983 civil rights action must show a deprivation of a "federal right by a person acting under color of state law." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). States and state officials acting in their official capacities cannot be sued for money damages under

4

§ 1983 because they are not considered to be "persons" for the purposes of the statute. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989); see also Lapides v. Bd. of Regents, 535 U.S. 613, 617, 122 S. Ct. 1640, 1643 (2002) ("[A] State is not a "person" against whom a § 1983 claim for money damages might be asserted.").

Carr asserted in her complaint that the Board is a "governmental entity" whose actions were official government actions that would be considered "state action." Because the Board is undeniably a state entity that was acting in its official capacity, we agree with the district court that the Board is not a "person" under the statute. See Lapides, 535 U.S. at 1643 (discussing that the plaintiff's § 1983 claim against the Board of Regents of the University System of Georgia was a claim against the State). Therefore, Carr's § 1983 claims against the Board, which were solely for money damages, must fail, and the district court properly granted summary judgment for the Board on these claims.

Carr next contends that the district court erred by granting summary judgment for the Board on her Title VI claim because there was a genuine issue of material fact regarding whether the Board's adverse treatment of Carr was based on her race.

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.,

5

"prohibits any recipient of federal financial assistance from discriminating on the basis of race, color, or national origin in any federally funded program." Burton v. City of Belle Glade, 178 F.3d 1175, 1202 (11th Cir. 1999). To state a claim under § 601 of Title VI, "a plaintiff must establish discriminatory intent." Id. (emphasis in original). The Supreme Court has said that "the reach of Title VI's protection extends no further than the Fourteenth Amendment." United States v. Fordice, 505 U.S. 717, 732 n.7, 112 S. Ct. 2727, 2737 n.7 (1992).

The parties and the district court analyzed Carr's Title VI claim under the McDonnell-Douglas burden-shifting analysis used for Title VII claims. However, because Title VI provides no more protection than the Fourteenth Amendment's Equal Protection Clause, we have said that our Title VI analysis "duplicate[s] exactly our equal protection analysis." Elston v. Talladega County Bd. of Educ., 997 F.2d 1394, 1405 n.11 (11th Cir. 1993). Therefore, we will examine whether Carr has presented sufficient evidence to raise a genuine issue of material fact under the familiar equal protection analysis.

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Clause "directs that 'all persons similarly circumstanced shall be treated alike.'" Plyler v. Doe, 457 U.S. 202, 216, 102 S. Ct.

6

2382, 2394 (1982) (quotation omitted). "But so too, '[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.'" Id. (quotation omitted, alteration in original).

In order to establish a violation of equal protection, a plaintiff must demonstrate that the challenged action was motivated by an intent to discriminate. Washington v. Davis, 426 U.S. 229, 239–48, 96 S. Ct. 2040, 2047–52 (1976). "Discriminatory intent may be established by evidence of such factors as substantial disparate impact, a history of discriminatory official actions, procedural and substantive departures from the norms generally followed by the decision-maker, and discriminatory statements in the legislative or administrative history of the decision." Elston, 997 F.2d at 1406.

Carr presented evidence that five white students accused of theft received lesser sanctions than she did. She failed, however, to respond to the Board's evidence indicating that those punishments were mitigated because of the individual circumstances of those students rather than their race. For instance, one white student, referred to as Student No. 0203-079, was suspended for two semesters following allegations that she stole items from her roommates and others in student housing. The Board presented evidence that the student's punishment was less than that given to other students because she had immediately withdrawn

from school and was institutionalized for serious mental illness. Carr was not similarly situated to this student.

Another white student, referred to as Student No. 0506-011, was suspended for two semesters after allegedly stealing folding tables and chairs from the student center. The Board presented evidence that the student immediately took responsibility for his misconduct and expressed "significant contrition" during the disciplinary proceedings. The Board proved that unlike this student, Carr lied during the disciplinary hearing, changing her story regarding how she obtained the books, and that she continually denied any wrongdoing. Carr was not similarly situated to this student.

A third white student, referred to as Student No. 0405-078, was given twenty hours of community service after allegedly allowing stolen university signs promoting Alcohol Awareness Week to be placed in his car. The Board presented evidence that his conduct was a prank, and that the punishment was mitigated because the student did not actually steal the signs, but only allowed them to be placed in his car. Carr was not similarly situated to this student.

A fourth white student, referred to as Student No. 0506-011, was suspended for one semester for allegedly stealing a laptop from the library. The Board presented evidence that the student did not intend to steal the laptop but instead

8

had failed to return it after it was due back in the library. This circumstance is different than Carr's because she actually sold the allegedly stolen textbooks back to the university bookstore. Carr was not similarly situated to this student.

Finally, the Board dropped charges against a fifth white student, referred to as Student No. 0405-181, who stole $285 in her role as treasurer of a student organization. The Board presented evidence that the student resigned from her position in the organization, wrote an apology, and returned the money. Carr did not write an apology or return the money she received. Carr was not similarly situated to this student.

Carr failed to present any evidence indicating that the sanctions imposed by the Board in any of these cases were due to anything other than the individual circumstances of the offense and the student. Moreover, in its motion for summary judgment, the Board presented evidence that several white students who were alleged to have engaged in theft actually were treated similarly to Carr. For example, a white student, referred to as Student No. 0102-050, was suspended from Kennesaw for a period of three years following allegations that she attempted to steal books on three separate occasions from the university bookstore. Another white student, referred to as Student No. 0203-131, was suspended for a period of two years after allegedly stealing a purse and forging a check from the purse.

9

For these reasons, Carr failed to present a genuine issue of material fact that the Board treated similarly situated students of different races differently, in violation of Title VI. The district court's grant of summary judgment for the Board was appropriate.

Finally, Carr contends that the district court erred by granting summary judgment for the Board on her state law breach of contract claim. According to Carr, the Board breached its contract with her by failing to abide by its own judicial rules, regulations, and procedures. Specifically, Carr argues that the Kennesaw undergraduate catalog formed a binding, written contract between herself and the Board. She asserts that the Board breached this contract by failing to give her a de novo review of the suspension by a three-member panel, by failing to investigate the facts on appeal, and by imposing the sanction before the hearing was held. We find no reversible error and affirm the district court.

"Under the doctrine of sovereign immunity, the state cannot be sued without its consent." State Bd. of Educ. v. Drury, 437 S.E.2d 290, 292 (Ga. 1993). Where state sovereign immunity has not been waived, it applies to the Board. Ga. Code Ann. § 20-3-36. The State of Georgia has waived sovereign immunity for written contracts only: "The state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or

hereafter entered into by the state or its departments and agencies." Ga. Const. art. I, § 2, ¶ IX(c).

A written contract can consist of multiple documents "as long as all the necessary terms are contained in signed contemporaneous writings." Bd. of Regents v. Tyson, 404 S.E.2d 557, 559 (Ga. 1991) (quotation omitted). To form a valid contract, "there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." Ga. Code Ann. §13-3-1. In Board of Regents v. Tyson, the Georgia Supreme Court held that a patient's hospital records did not form a written contract between the patient and the treating hospital because there were no signed contemporaneous writings indicating "consideration moving to the contract." 404 S.E.2d at 559 (quotation omitted).

Carr has presented no evidence from which a reasonable jury could conclude that the undergraduate catalog formed a binding, written contract between herself and the Board. Each version of the undergraduate catalog contained the statement that it was for "informational purposes only and should not be construed as the basis of a contract between a student and [the Board]." There is also no indication of any signed contemporaneous writings between the parties indicating "consideration moving to the contract." See Tyson, 404 S.E.2d at 559. Therefore,

11

even if any conduct by the Board arguably could have created a contract between the parties, the breach of that contract is not enforceable against the Board because the Board has not waived its sovereign immunity as to non-written agreements.

Carr's reliance on Tyson and Federov v. Board of Regents, 194 F. Supp. 2d 1378 (S.D. Ga. 2002), is misplaced. Tyson merely held that, for the purposes of state sovereign immunity, a written contract could be made up of multiple signed contemporaneous documents. 404 S.E.2d at 558–59. And Federov does not advance Carr's claim because it simply restates the idea that the state of Georgia is subject to liability for breach of contract only if the contract is in writing. 194 F. Supp. 2d at 1394. Accordingly, the district court properly granted summary judgment for the Board on Carr's state law breach of contract claim.

**AFFIRMED.**