## 76666. DESPRINT SERVICES, INC. v. DeKALB COUNTY.
### (372 SE2d 488)

CARLEY, Judge.

Appellant-plaintiff Desprint Services, Inc., is the lessee of property which was flooded as the result of a burst water main. Some weeks prior to the flooding, the water main had been equipped with a new "butterfly" valve in connection with a road construction project undertaken by appellee-defendant DeKalb County. Apparently, the water main had burst at or near the location of the recently installed "butterfly" valve. As the result of the flooding of its property, appellant filed a multi-count complaint against appellee, one count of which alleged an inverse condemnation claim. According to the allegations of this count, the flooding had "resulted from the public works" of appellee and thus constituted a compensable damaging of appellant's private property.

After an answer had been filed and a period of discovery had elapsed, appellee moved for summary judgment as to that count of appellant's complaint which alleged an inverse condemnation claim. The trial court granted appellee's motion and appellant appeals from this grant of partial summary judgment in favor of appellee.

1. "A county is not liable to suit for any cause of action unless made so by statute." OCGA § 36-1-4. The authority by which counties are rendered amenable to suit for inverse condemnation claims is found in Art. I, Sec. III, Par. I of the Ga. Const. of 1983: "[P]rivate property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." "[T]he constitutional prohibition against the taking of property without just compensation falls within [the] exception [to county immunity from suit]. [Cits.]" *Duffield v. DeKalb County*, 242 Ga. 432, 435 (2) (249 SE2d 235) (1978). It is undisputed that appellant's property was damaged and that the damage was the result of the bursting of appellee's water main. It is also undisputed that appellant has not been paid any compensation by appellee for that damage. The only issue is, therefore, whether appellant's property was damaged for a "public purpose" within the meaning of the applicable constitutional provision. If it was, then appellant has a viable inverse condemnation claim against appellee. If it was not, then OCGA § 36-1-4 precludes appellant's assertion of an inverse condemnation claim against appellee.

It is clear that, during the actual construction phase of a public works project, such damage to private property as may result from the ongoing construction activity constitutes damage which is done for a "public purpose." The actual construction of a public works project is certainly being undertaken for a "public purpose" and the Constitution of this state thus mandates that just and adequate compensation be paid for any damage to private property which occurs

during and as the result of such construction activity. "The defendants, in excavating the ditch adjacent to the plaintiffs' property for the purpose of laying therein what may properly be termed an appurtenance of its fire protection system, [were] certainly *engaged in work with a public purpose.* When the plaintiffs' building collapsed as a *result of this work,* it can not seriously be contended that the building was damaged by reason of anything other than *construction of improvements* made for the use of the public, or that the damage was any less because the defendants had not intended to take or damage the building for the purpose of laying the cables and wires for the fire signal station." (Emphasis supplied.) *City of Atlanta v. Kenny,* 83 Ga. App. 823, 828 (1) (64 SE2d 912) (1951). See also *Pair Dev. Co. v. City of Atlanta,* 144 Ga. App. 239 (240 SE2d 897) (1977) (damage to private property occurred during and as the result of activity undertaken in connection with the repair of a sewer line); *Richmond County v. Williams,* 109 Ga. App. 670 (137 SE2d 343) (1964) (damage to private property occurred during and as the result of the use of pile driving machinery in a road construction project).

In the present case, however, the damage to appellant's property did not occur during and as the result of any ongoing activity undertaken in connection with the construction of that public works project of which the water main was an element. It is undisputed that the installation of the new "butterfly" valve had taken place several weeks prior to the flood of appellant's premises. It is also undisputed that the water main had burst spontaneously and not as the result of any active ongoing construction work on the road project. Thus, appellant's property was damaged solely as the result of appellee's post-construction *operation* of the water main itself and was not damaged for the "public purpose" of actually constructing any public works project. See *Johnson v. City of Atlanta,* 117 Ga. App. 586 (161 SE2d 399) (1968).

2. This does not, however, necessarily mean that appellant has no viable inverse condemnation claim against appellee. One whose private property is damaged by the post-construction operation of a county public works project may, under certain circumstances, recover under an inverse condemnation theory. It has been "recognized in a number of cases that where a county causes a *nuisance* to exist which amounts to a taking of property of one of its citizens for public purposes, the county is liable. [Cits.]" (Emphasis supplied.) *Miree v. United States,* 242 Ga. 126, 134 (2) (249 SE2d 573) (1978). The operation and maintenance of a public works project is certainly being undertaken for a "public purpose" and the constitution of this state thus mandates that just and adequate compensation be paid when a county's operation and maintenance of such a project results in the creation of a nuisance which damages private property. "[T]he Con-

stitution provides for a waiver of sovereign immunity where a county creates a nuisance which amounts to an inverse condemnation." *Duffield v. DeKalb County,* supra at 433 (1). The issue in this case thus becomes whether the damage to appellant's property was the result of appellee's operation and maintenance of the public works project in such a manner as to constitute a nuisance.

The evidence of record is undisputed that the bursting of the water main and the flooding of appellant's property was a single isolated occurrence. This evidence shows that appellant's property was not damaged as the result of appellee's creation and maintenance of a nuisance. "This is true though damage to the property . . . is of a 'more or less permanent nature.' . . . 'The whole idea of *nuisance* is that of either a continuous or regularly repetitious act or condition which causes the hurt, inconvenience or injury . . . A single isolated occurrence or act, which if regularly repeated would constitute a nuisance, is not a nuisance until it is regularly repeated.' . . . '[T]he injury complained of here is more in the nature of a tort or a trespass inflicting in one act a direct injury and damage (even though in effect one of more or less lasting duration) to [appellant's] realty as distinguished from the maintenance of a nuisance where the injury complained of is the result of a continuous or recurrent act or condition and is of an indirect character.' [Cit.]" *Johnson v. City of Atlanta,* supra at 588-589. Thus, appellant's property was damaged by a single malfunction in the operation of the public works project and was not damaged by a nuisance arising from a public project created and maintained for a "public purpose."

3. Thus, we must now decide whether appellant has a viable inverse condemnation claim based upon appellee's post-construction operation of a public project in such a manner as to cause damage to private property, but not so as to create a nuisance.

To hold that a viable inverse condemnation claim exists under such circumstances would be to impose upon a county the status of an insurer of the operation of its public works project. Regardless of how far removed the occurrence of the damage may be from the actual construction of the public works project, a single malfunction in the operation of the project would require payment by the county of compensation to the private property owner. However, the applicable constitutional provision clearly requires only that compensation be paid by a county for damage done to private property for a "public purpose." As a matter of law, the post-construction non-nuisance damage done to private property by a single malfunction in the operation of a public works project is not damage which has been done for a "public purpose." See *Johnson v. City of Atlanta,* supra. As long as a county operates and maintains its public works project so as not to result in the creation of a nuisance, OCGA § 36-1-4 renders it immune

from suit for damage resulting from the operation and maintenance of the project. It follows that the trial court correctly granted summary judgment in favor of appellee as to appellant's inverse condemnation claim.

*Judgment affirmed. Deen, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 6, 1988.

*James M. Lord, Stephen G. Lowe, Robert L. Crewdson,* for appellants.

*Albert Sidney Johnson, Karen K. Karabinos, Michael J. Bowers, Attorney General, Beverly B. Martin, Assistant Attorney General,* for appellee.