A05A0960. BROWN et al. v. PENLAND CONSTRUCTION COMPANY, INC.
(623 SE2d 717)

SMITH, Presiding Judge.

In this action, Penland Construction Company, Inc. (PCC) sought payment for an indoor practice facility it built for the Ridgeland High

---

*Rosas v. State*, 276 Ga. App. 513, 518 (1) (c) (624 SE2d 142) (2005).

School baseball team on land owned by the Walker County Board of Education. PCC brought suit against the board, the Ridgeland High School Baseball Athletic Boosters Club (boosters club), and Michael Brown, the former baseball coach at the high school. The Walker County School District was added later as a defendant. The case was tried to a jury, but the trial court granted in part the defendants' motions for a directed verdict. Using a special verdict form, the jury then found that no oral contract existed between the parties but that PCC was entitled to a recovery in quantum meruit. The jury returned a verdict in favor of PCC and against Brown, the board, and the school district in the amount of $150,000.[1] Judgment was entered on the verdict, and the board, the school district, and Brown filed this joint appeal. They assert error in the trial court's failure to direct a verdict in their favor on the issue of quantum meruit. They also challenge the trial court's failure to direct a verdict in Brown's favor, because he receives no personal benefit from the building, and in the board's favor, because it is not a legal entity. Finally, they maintain that the jury's verdict was against the weight of the evidence. We find no merit in any of these enumerations, and we affirm the judgment against all appellants.

The evidence presented at trial showed that Brown approached Rick Penland, who is the principal shareholder in PCC, and asked him for information about constructing an indoor baseball practice facility to be used for training and for summer camps. At the outset, Brown told Penland that the price should cover only a prefabricated 60' by 100' building and should not include "any grade work," "electrical" work, or "accessories." Several modifications were made and priced, and when Brown was satisfied, he informed Penland that if the board approved the project, the facility would be financed through the boosters club, which had paid for a baseball field and stadium through various fund-raising projects, donations, and bank loans. Penland testified that he gave Brown several "quotes," and the final quote for the bare building was $40,000. At Brown's behest, PCC provided a "scope of work" document to the board's supervisor of maintenance, who was to bring it up at a board meeting.

The board approved the project but announced publicly that the facility was being donated. Penland immediately questioned Brown, who told Penland that the announcement was a "media misprint." Relying on Brown's word, PCC ordered the prefabricated building from the manufacturer. Brown told Penland that the boosters club would try to do some of the work, including the site preparation,

---

[1] The jury returned a verdict in favor of the boosters club, and it is not involved in this appeal.

themselves to keep costs down. But that did not happen; when the boosters club members were unable to do the grading, Brown asked PCC to do it, so the construction could be started. PCC ended up doing some of the site preparation itself and subcontracting the remainder. PCC also did much of the electrical work and various interior add-ons. Penland informed Brown that all this added work could not be done for the original $40,000 quote, and Brown simply requested that PCC "keep good receipts."

During construction, Brown consistently represented to Penland that he was speaking for the county and the boosters club. After completion in October 1999, the facility was used for summer and winter baseball camps run by Brown, by high school athletic teams, and as a classroom. PCC submitted numerous invoices to the board, but the board refused to pay for the building. PCC then filed this action. The parties stipulated that PCC had made demand for payment, and they also stipulated that the board refused PCC's request that it be permitted to disassemble the building and remove it from the board's property.

1. At the heart of this appeal is appellants' contention that the trial court should have directed a verdict in their favor because no written contract existed and a recovery in quantum meruit was prohibited by sovereign immunity. OCGA § 36-10-1 provides that "all contracts entered into by the county governing authority with other persons in behalf of the county shall be in writing and entered on its minutes." To be enforceable, therefore, a contract with a county or subdivision of a county must comply with those requirements. *Twiggs County v. Oconee Elec. Membership Corp.*, 245 Ga. App. 231, 232 (1) (536 SE2d 553) (2000). As a result, "quantum meruit is not available when a county is the defendant." (Citations and punctuation omitted.) *Cherokee County v. Hause*, 229 Ga. App. 578, 579 (2) (494 SE2d 234) (1997). As the Georgia Supreme Court noted in *PMS Constr. Co. v. DeKalb County*, 243 Ga. 870 (257 SE2d 285) (1979), quantum meruit is another name for an implied contract, which is statutorily prohibited when a county or its subdivision is the defendant. Id. at 872 (2). Even then, restitution is one of the available remedies for breach of an express contract, along with damages and specific performance. Id. We need not decide here whether PCC was limited in its recovery to restitution, however, because we find that the jury verdict may stand for another reason.

Basic principles of constitutional law require that when property is taken for a public purpose by any governmental entity, including a county (or a subdivision or agency thereof), fair and adequate compensation must be paid to the owner of the property. Ga. Const. of 1983, Art. I, Sec. III, Par. I (a). Both the Supreme Court and this court have held that if the owner of property taken for a public purpose

brings suit to enforce the constitutional right to just compensation, sovereign immunity is not a bar. "Since the recovery of just and adequate compensation for private property . . . taken for public purposes is itself an express constitutional right, sovereign immunity is not a viable bar to an action to enforce that right. [Cits.]" *State Bd. of Ed. v. Drury*, 263 Ga. 429, 430 (1) (437 SE2d 290) (1993). "The constitutional prohibition against the taking of property without just compensation falls within the exception to county immunity from suit." (Citations and punctuation omitted.) *Desprint Svcs. v. DeKalb County*, 188 Ga. App. 218 (1) (372 SE2d 488) (1988).

This exception is not limited to a taking of real property, but it applies only if the complaining party has a valid property interest in that which is taken. *Drury*, supra, 263 Ga. at 431-432 (1). In *Drury*, the plaintiffs were teachers who held nonrenewable certificates and did not pass the performance test that would qualify them to receive permanent teaching certificates. Because plaintiffs had no property interest in the nonrenewable certificates, nothing was "taken" from them, and the court held that they could not invoke the constitutional right to just compensation. Id.

Here, PCC's "property interest" in the building it erected cannot seriously be questioned. It paid for the materials and expended the labor to construct the building. No doubt exists that the school district is using the building in the course of providing public education. The high school principal, when asked whether the facility was a benefit to the school, testified, "Most definitely yes." Because the school district refused to pay for the building it is using for public purposes, its conduct is a "taking" for constitutional purposes. PCC therefore was entitled to enforce its constitutional right.

2. Relying upon *Cook v. Colquitt County Bd. of Ed.*, 261 Ga. 841 (412 SE2d 828) (1992), appellants contend that the trial court should have directed a verdict in favor of the board because it is not a legal entity capable of being sued absent a special Act of the Georgia General Assembly. We recognize that "a county board of education, unlike the school district which it manages, is not a body corporate and does not have the capacity to sue or be sued." Id. But that principle is not fatal to PCC because the judgment in this case was awarded against the board, the school district, and Brown jointly and severally. As noted in *Cook*, the school district is an entity capable of being sued,[2] id., and PCC may therefore have relief against the school district.

---

[2] We cannot agree with PCC that the school district is not a party to this appeal simply because its name was inadvertently omitted from the briefs.

Furthermore, in this case the board holds title to and insures the property on which the building was erected. Because it is the named grantee on the deed to the property, it has held itself out as a legal entity. It may therefore be equitably estopped from denying that status in litigation concerning that property if "it would be more unjust and productive of evil to hear the truth than to forbear investigation." (Citation, punctuation and footnote omitted.) *Makowski v. Waldrop*, 262 Ga. App. 130, 135 (584 SE2d 714) (2003). We believe that in this case it would be unjust to permit the board to deny its status as a legal entity to avoid responsibility for a structure it uses on land it owns, unless complete relief may be afforded PCC by the school district.

3. Appellants also maintain that the award against Brown in his individual capacity must be reversed because no evidence was presented that he was acting for his own benefit or that he obtained any individual benefit from the building. Appellants argue that Brown did not own the land on which the building was erected, that he therefore could not have benefitted from the improvement, and that he is no longer employed by the board. While these facts are true, they are by no means sufficient to support appellants' position.

It is undisputed that while employed by the board, Brown benefitted economically from the construction of the building by using it to recruit and train high school players, which increased both the skills and the prestige of the program and greatly enhanced his reputation. In addition, he operated baseball camps in the facility, which were not restricted to players on the high school baseball team. The attendees paid tuition to attend the camps, which was deposited into a school account from which Brown was compensated for running the camps. This evidence was sufficient to present a jury question as to whether Brown benefitted, and the jury obviously concluded that he did.

4. Finally, we address appellants' assertion that the verdict was against the weight of the evidence. In doing so, we bear in mind that on appeal we must affirm the jury's verdict if any evidence supports it, and we must construe the evidence in a light most favorable to the prevailing party. *Edwards v. Sabat*, 263 Ga. App. 852 (589 SE2d 618) (2003).

Appellants contend that no evidence was presented of the value of the building to either defendant. We do not agree. Penland, who is in the construction business, gave uncontroverted testimony that the value of the materials was $65,135.31, and receipts supporting this figure were introduced into evidence. Combined with the value of the labor PCC provided and other market factors, he concluded that the value of the facility was at least $23 per square foot, or $138,000. The

facility also generates intangible benefits in attracting student athletes to the baseball program at Ridgeland High School, and it will continue to do so for many years in the future. Added to the benefits it conferred upon Brown, as discussed in Division 3, supra, the verdict was within the range of the evidence. "Questions of damages are ordinarily for the jury; the appellate court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence." *Wells Fargo Home Mtg. v. Cook*, 267 Ga. App. 368, 369 (1) (599 SE2d 319) (2004). Construing the evidence with all inferences and presumptions in favor of upholding the verdict, we cannot conclude that the jury's verdict of $150,000 was so excessive that it warrants reversal.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED NOVEMBER 23, 2005 — ▮▮▮▮▮▮▮▮

*Swift, Currie, McGhee & Hiers, Christopher D. Balch,* for appellants.

*Miller & Martin, Larry L. Cash, William D. Cunningham,* for appellee.