301 Ga. 308
FINAL COPY

S17A0004. ABRAMYAN et al. v. STATE OF GEORGIA et al.

HUNSTEIN, Justice.

During the 2015 General Session, the legislature amended certain statutes governing Certificates of Public Necessity and Convenience ("CPNCs") – also known as taxi medallions — and created new provisions authorizing (and regulating) ride-sharing programs throughout the state. Appellants, taxicab drivers who operate in the City of Atlanta and own CPNCs, filed suit in Fulton County Superior Court claiming that the Act resulted in an unconstitutional taking and inverse condemnation of their CPNCs. The State moved to dismiss, arguing, inter alia, that Appellants had failed to state legally cognizable claims; the trial court agreed and granted the motion. We affirm the judgment of the trial court.

Prior to May 6, 2015, OCGA § 36-60-25 (a) authorized counties and municipalities to require "the owner or operator of a taxicab *or vehicle for hire*" to obtain a CPNC to operate "such taxicab or *vehicle for hire*" within the county or municipality, respectively. (Emphasis supplied.) OCGA § 36-60-25 (a)

(2007). Consistent with this authorization, the City of Atlanta required CPNCs for taxicabs and "vehicles for hire" operating within the city limits — capping the number of available CPNCs at 1,600 — and the City regulated those taxi medallions with an extensive regulatory scheme. See Atl. City Ord. § 162-26 et seq. However, in 2015, the General Assembly passed legislation to regulate "transportation for hire" and preempt "the entire field of administration and regulation over ride share network services . . . and taxi services." See Ga. L. 2015, p. 1262, § 3. In addition to permitting and regulating ride-sharing programs throughout the State, Act 195 ("the Act") amends OCGA § 36-60-25 (a) to *prohibit* counties and municipalities from enacting, adopting, or enforcing any *new* ordinance requiring taxicabs to procure CPNCs or taxi medallions; the legislature left intact existing regulatory schemes — such as the one enacted by the City of Atlanta – with respect to the regulation of *taxicabs*, removing any reference to "vehicle for hire" from OCGA § 36-60-25 (a).[1] See Ga. L. 2015, p. 1262, § 1. Consequently, the City of Atlanta amended its CPNC regulations to reflect its circumscribed authority under OCGA § 36-60-25, including redefining "taxicab" and "vehicle for hire."

---

[1] Act 195 also implicates the regulation of other forms of transportation for hire, such as limousines, but we need not discuss or address those here.

In July 2015, Appellants filed a complaint claiming that Act 195 resulted in an unconstitutional taking and inverse condemnation.[2] Specifically, Appellants asserted that they were deprived of their constitutionally protected "exclusive right to provide rides originating in the city limits which charged fares based on time and mileage" and that the Act damaged the value of their CPNCs. In granting the State's motion to dismiss, the trial court concluded that the Act was a valid exercise of legislative authority, that the Act did not impair the use or necessity of the CPNCs, and that, though the Act may have diminished the value of the CPNCs, Appellants were not entitled to an "unalterable monopoly" with respect to vehicles for hire in the City of Atlanta. The trial court's conclusions are sound.

We begin with the well-settled standard that

> [a] motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. If, within the framework of the complaint, evidence may be introduced

---

[2] Appellants do not challenge the constitutionality of Act 195. Instead, they ask this Court to decide the novel constitutional issue of whether the City of Atlanta CPNCs establish a constitutionally protected property interest taken by the Act.

which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Footnotes omitted.) Anderson v. Flake, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997). "On appeal, a trial court's ruling on a motion to dismiss for failure to state a claim for which relief may be granted is reviewed de novo." Northway v. Allen, 291 Ga. 227, 229 (728 SE2d 624) (2012).

As an initial matter, "'[t]he (s)tate has the authority under its police powers to enact reasonable laws regulating the use and operation of motor vehicles upon the public highways.'" (Citation omitted.) Quiller v. Bowman, 262 Ga. 769, 770 (425 SE2d 641) (1993). In so doing, "private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." Ga. Const. of 1983, Art. I, Sec. III, Par. I (a). See also Bray v. Dept. of Transp., 324 Ga. App. 315, 317 (3) (750 SE2d 391) (2013) ("An 'inverse condemnation' action is brought under the eminent domain provisions of the Georgia Constitution 'requiring the payment of compensation for the taking or damaging of private property for public purposes.'" (citation omitted)). "Private property" in this context is not limited to *real* property, see,

e.g., <u>State Bd. of Ed. v. Drury</u>, 263 Ga. 429, 431 (437 SE2d 290) (1993), but a taking or inverse condemnation must involve the deprivation of a protected property interest, see <u>Rouse v. Dept. of Nat. Resources</u>, 271 Ga. 726 (6) (524 SE2d 455) (1999).  See also <u>Pennington v. Gwinnett County</u>, 329 Ga. App. 255 (2) (764 SE2d 860) (2014).  "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law —  rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." <u>Board of Regents of State Colleges v. Roth</u>, 408 U. S. 564, 577 (III) (92 SCt 2701, 33 LE2d 548) (1972).  To have such a property interest, "a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." Id.

Though it may be true that an occupational or business license —  once secured —  can become a protected property right, see, e.g, <u>Goldrush II v. City of Marietta</u>, 267 Ga. 683 (7) (482 SE2d 347) (1997); <u>Drury</u>, 263 Ga. at 431, there is no argument here that the Act *deprives* Appellants of their CPNCs or of their right to engage in the taxicab business; indeed, a CPNC is still necessary

to operate a taxicab in the City of Atlanta. Further, even if this Court were to assume arguendo that former OCGA § 36-60-25 (a) and the regulatory scheme enacted by the City of Atlanta — which, together, control the application, transferability, use, renewal, and revocation of CPNCs, as well as permit CPNC holders to use their medallions as collateral for a secured loan — created a protected property right, the harm about which Appellants complain is not amongst the rights associated with the taxi medallion.

Appellants contend on appeal, as they did below, that the CPNC system granted them an "exclusive right" to operate "vehicles for hire" within the City of Atlanta and that it was this exclusivity that created value in the CPNCs; according to Appellants, the Act permits ride-share companies to operate an unlimited number of vehicles for hire in the City, thus severely damaging the value of the CPNCs. Though the City of Atlanta capped the number of CPNCs at 1,600, the ordinance setting the cap reflects that the limit arises out of the correlation "between the number of taxicabs operating within a geographic area and the quality of service they provide" and that "[a]n excessive number of taxicabs results in a reduced level of service and more passenger complaints." Atl. City Ord. § 162-61 (a). Thus, this limitation — which was set over twenty

years ago — is plainly contingent on unfixed variables, such as city boundaries, quality of service, level of service, and consumer passenger complaints. Appellants have pointed to no law that would have prevented the City of Atlanta or the legislature from increasing the CPNC limit (and thus, the number of drivers) as those variables changed, and there is no reasonable basis to conclude that any property interest Appellants may have in their respective CPNCs extends to exclusivity or a limited supply of CPNCs. See Minneapolis Taxis Owners Coalition, Inc. v. City of Minneapolis, 572 F3d 502, 509 (II) (A) (8th Cir. 2009) ("Even if there is a property interest in a particular license, 'a takings claim cannot be supported by asserting ownership in a property interest that is different and more expansive than the one actually possessed.'" (citations omitted)).[3]

---

[3] It is not the existing CPNC cap, alone, that sustains the value of the CPNCs. As Appellants recognize, the City of Atlanta still retains dozens of unsold-but-available CPNCs, and the persistent value of the CPNCs arises, at least in part, from provisions in the City of Atlanta ordinance which require any remaining CPNCs to be sold at a price equal to or more than the sales price in previous years. See Atl. City Ord. § 162-61 (c) ("For purposes of this article only the term 'market value' shall mean the value calculated by the department based upon the sales prices for each CPNC during the prior year."). Just as the Act does not divest Appellants of their CPNCs, the ordinance maintaining the value of the CPNCs remains intact. Further, any anticipated profit or monetary benefit as part of a transfer of a CPNC – whether dependent on the "market value" as established by the City or on a secondary market – is not a protected property interest. See Minneapolis Taxi Owners Coalition, 572 F3d at 509 (II) (A) ("[A]ny property interest that the taxicab-license holders' [sic]

Taxicabs "have been the subject of frequent and intensive regulation in this state," and the Act "does not take business property for a public use[,] it merely requires an already regulated business to adjust its property to the new law." State v. Old South Amusements, Inc., 275 Ga. 274, 279-280 (3) (564 SE2d 710) (2002). As this Court stated over 100 years ago:

> Rarely, perhaps, does any new law which acts with vigor upon commerce, local or general, fail to impair the value of more or less property. Surely the damage clause in our . . . constitution was not intended to make the State or the legislature an insurer against all shrinkage of values that might result from the passage of laws intended for the public good. Can it be seriously thought that the State must literally pay its way to the establishment of a sound and wholesome system of internal police and public order?

Menken v. City of Atlanta, 78 Ga. 668, 678 (2 SE 559) (1887).

Accordingly, because Appellants have failed to identify the deprivation of or damage to a protected property interest, their taking and inverse condemnation claims fail as a matter of law, and they were properly dismissed.

Judgment affirmed. All the Justices concur, except Grant, J., disqualified.

---

may possess does not extend to the market value of the taxicab licenses derived through the closed nature of the City's taxicab market."). See also Illinois Transp. Trade Assoc. v. City of Chicago, 839 F3d 594, 596-597 (7th Cir. 2016).

Decided May 15, 2017. — Reconsideration denied June 5, 2017.

City ordinance; constitutional question. Fulton Superior Court. Before Judge Schwall.

William A. Pannell; Richard N. Hubert; Fryer, Shuster & Lester, Keith E. Fryer, for appellants.

Samuel S. Olens, Attorney General, W. Wright Banks, Jr., Deputy Attorney General, Robin J. Leigh, Senior Assistant Attorney General, Julie A. Jacobs, Brooke E. Heinz, Assistant Attorneys General, for appellees.