**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**December 21, 2020**

# In the Court of Appeals of Georgia

A20A1993. HBC2018, LLC v. PAULDING COUNTY SCHOOL DISTRICT.

PIPKIN, Judge.

Georgia Heritage Bank ("the Bank") filed a complaint alleging, among other things, a claim for inverse condemnation against the Paulding County School District ("the District").[1] The trial court granted summary judgment in favor of the District on this claim. The Bank appeals this ruling. As the trial court's order is sound, we affirm.

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Thus, to prevail on a motion for summary judgment, the moving party must

---

[1] After suit was filed, HBC2018, LLC purchased the debt from Georgia Heritage Bank and was substituted as plaintiff. For ease of reading, we refer simply to the Bank.

demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law. When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.

(Footnotes and punctuation omitted). *Solid Equities, Inc. v. City of Atlanta*, 308 Ga. App. 895, 895 (710 SE2d 165) (2011).

Here, the relevant facts are largely undisputed. In February 2008, the Paulding County School Board ("the Board") voted to allow the construction of a field house at East Paulding High School (the "School"). The Board allocated $450,000 of taxpayer funds for the project, and Board minutes reflect an understanding that the remainder of the $900,000 cost would be paid by private donations. A contract for construction was awarded to LTP Construction Company.

Lee Paris and Ben Paris – principals of LTP Construction – were also officers of the East Paulding High School Booster Club (the "Booster Club"). Lee Paris, in his capacity as the president of the Booster Club, obtained a $450,000 loan from the Bank, which was used to complete the construction of the field house. The collateral for the loan was listed as the "accounts receivable, inventory, equipment, rents and

leases now owned or hereafter acquired."[2] Lee and Ben Paris served as guarantors on the loan.[3] Following its construction, the School used the field house both for sports teams and classes.

From the outset, the Booster Club had difficulty meeting its loan obligations. In 2010, over $440,000 of the debt was restructured to require a yearly principal payment of $10,000 plus interest for four years followed by a balloon payment estimated to be over $390,000. Lee Paris signed the agreement in his capacity as president of the Booster Club.

In 2013, Amanda Harmon – with the encouragement of the Parises – took over as Booster Club president. At the time, she was unaware of the loan obligation, which was not current. The balloon payment came due in 2014, and Harmon was pressured to sign a new loan agreement in her capacity as Booster Club president. Harmon met with various School officials to discuss repayment of the loan. Although the School

---

[2] In actuality, it appears the booster club had few resources.

[3] Despite the integral part the Parises played in obtaining the loan, they were not deposed, and the record contains no information regarding their decision-making process in obtaining the loan, the proceeds of which were paid to their construction company. During oral argument, it was suggested that the Parises built the field house at cost, but there appears to be nothing in the record to support this suggestion. After completion of the field house, the Bank apparently released the Parises from their personal guaranties, and they are not parties to this lawsuit.

3

refused to take over the loan, the principal agreed to use discretionary funds to pay a portion of the obligation.

Notwithstanding the School's assistance, the Booster Club still could not meet its loan obligations. Booster Club membership dropped off, and the remaining members resented having to repay the loan. When Harmon's tenure as Booster Club president ended, no one was willing to succeed her, and the club ceased functioning.[4]

In late 2016, Board members began to question the use of School funds to repay a loan it was not legally obligated to repay. In early 2017, the Board voted to disallow use of the School's discretionary funds to repay the loan.

The Bank filed suit against the District, alleging a claim for inverse condemnation.[5] According to the Bank, the School's continued use of the property without payment of the debt constitutes an unconstitutional taking. The parties filed cross-motions for summary judgment, and the trial court granted summary judgment

---

[4] A new parent group was created called the Touchdown Club, which performed some of the same fund-raising activities as the Booster Club. There is no suggestion that this new organization is liable for the debt.

[5] The Bank also sued the Booster Club, which failed to answer. The trial court entered default judgment against the Booster Club.

in favor of the District, finding no taking as a matter of law. The Bank appeals this ruling.

As a threshold matter, we note that the Bank appears to conflate an inverse condemnation claim with a takings claim. See *City of Tybee Island, Ga. v. Live Oak Group*, 324 Ga. App. 476, 479 (751 SE2d 123) (2013) (concluding that appellants had failed to raise an inverse condemnation claim and declining to address whether a constitutional taking claim had been raised). An inverse condemnation claim ordinarily involves affirmative government action that causes a nuisance or a trespass, which diminishes the value of private property. See Id. (no inverse condemnation claim where there was no affirmative act by the City). Here, there is no suggestion that the District caused a nuisance or trespass; it thus appears the complaint, in substance, alleges an unconstitutional taking claim, and we construe it as such. See *Forest City Gun Club v. Chatham County*, 280 Ga. App. 219, 220 (633 SE2d 623) (2006) (courts construe pleadings according to their substance and function rather than by nomenclature).

"Basic principles of constitutional law require that when property is taken for a public purpose by any governmental entity, including a county (or a subdivision or agency thereof), fair and adequate compensation must be paid to the owner of the

5

property." *Brown v. Penland Const. Co.*, 276 Ga. App. 522, 524 (1) (623 SE2d 717) (2005), reversed on other grounds, 281 Ga. 625 (641 SE2d 522) (2007). Such "[a]n unconstitutional taking claim requires the taking of a valid property interest." *Layer v. Barrow County*, 297 Ga. 871, 873 (2) (778 SE2d 156) (2015). Here, however, it is undisputed that the Bank has no property interest in the field house. Instead, the Bank contends it has "a cognizable property interest in being repaid for the loan used to construct the field house." Assuming that the Bank's interest in repayment is a cognizable interest, the Bank has pointed to no evidence establishing that the School's use of the field house has frustrated the Bank's right to seek repayment of the debt; indeed, the Bank has secured a default judgment against the obligor on the loan and has released the guarantors. Moreover, the uncontradicted evidence establishes that the District was not a party to the loan agreement and is under no legal obligation to repay the Bank. See, e. g., *Willard v. Stewart Title Guar. Co.*, 264 Ga. 555, 555 (448 SE2d 696) (1994) (partner who had not signed loan was not liable for repayment even though loan proceeds benefitted partnership). It is of no consequence that the Bank expected the School to repay the loan; a takings claim requires that the Bank have a legitimate claim of entitlement to repayment. See

6

*Abramyan v. State of Georgia*, 301 Ga. 308, 310 (800 SE2d 366) (2017). Under these circumstances, the Bank is unable to sustain a takings claim against the District.

To avoid this result, the Bank points to *Brown v. Penland Construction Co.*, supra. In that case, a school's baseball coach arranged for a contractor to install a prefabricated building on high school property for use by the school. The coach represented to the contractor that the booster club would pay for the construction. After completing the installation, the contractor sued the school board, the booster club, and the baseball coach. A jury found that no oral contract existed, but it found that the contractor was entitled to $150,000 in quantum meruit. On appeal, this Court found that sovereign immunity barred a recovery in quantum meruit. Rather than reaching the issue of the contractor's entitlement to restitution, this Court found that the contractor had a property interest in the building it erected and that the school district had taken use of that building; thus, the contractor was entitled to enforce his constitutional right to compensation for the taking. See *Brown*, 276 Ga. App. at 525 (1).

Unlike in *Brown*, the Bank has no property interest in the building. The Bank did not provide the materials and expend the labor for the construction of the field house. Rather, the Bank issued a loan to the Booster Club, which assumed

responsibility for repayment of the loan. The fact that the Booster Club donated the proceeds of the loan for the construction of the field house does not render the District liable on the loan. See, e. g., *Walker v. Gwinnett Hosp. System*, 263 Ga. App. 554, 557 (1) (588 SE2d 441) (2003) (holding that the written terms of the loan agreement governed repayment obligations; the mere fact that a party had a different expectation did not alter the express terms of the agreement).

Finally, the Bank argues that an issue of fact exists as to whether the Board's decision to disallow loan payments to the Bank constitutes a taking. According to the minutes from the Board meeting, the Board voted

> to stop and disallow any further funds or payments, cash or in kind, to [the Bank] for the purpose of servicing or retiring the loan contract between [the Bank] and [the booster club], by this board or any entity under the direction or control of Paulding County School Board policy, practices, or procedures including but not limited to [the School], whether those payments be direct or indirect [through] outside or third party organizations, or whether such disallowed payments would be issued by any local funds held by [the School] or under the control of the [School's] administration.

Again, however, neither the School nor the Board was liable for repayment of the loan. The fact that the School made gratuitous payments did not create a legal

obligation on the part of the School. See, e. g., *Trust Co. of Columbus v. Refrigeration Supplies*, 241 Ga. 406, 407 (246 SE2d 282) (1978) (payment by property owner to materialman was gratuitous where there was no privity of contract); *Gosnell v. Waldrip*, 158 Ga. App. 685, 686 (3) (282 SE2d 168) (1981) (payments made by third party did not create a new contract to repay debt).

Because the Bank has shown neither a valid property interest nor a right to repayment from the District, the trial court properly granted summary judgment.

*Judgment affirmed. Barnes, P. J., and Gobeil, J., concur*.