**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 24, 2025**

# In the Court of Appeals of Georgia

A25A0636. ECBI WARNER, LLC et al v. PATRICK et al.

DOYLE, Presiding Judge.

This case arises from a dispute between eCBI Warner, LLC, and A2D, Inc., (collectively, "Plaintiffs"), the City of Warner Robins, and individual city employees and actors (collectively, "the City"). In the first appearance of this case before us — *eCBI Warner, LLC v. Patrick* ("*eCBI I*")[1] — this Court reversed in part the trial court's grant of summary judgment on Plaintiffs' claims against the City, explaining

---

[1] 370 Ga. App. 1 (893 SE2d 765) (2023). On remand, Plaintiffs withdrew their individual-capacity claims against LaRhonda Patrick, Charlie Bibb, Larry Curtis, Clifford Holmes, Keith Lauritsen, Kevin Lashley, and Derek Mack; but they did not withdraw their individual-capacity claims against Thomas Randall Toms. On remand, the trial court dismissed the corruption claim against Toms, and Plaintiffs have not appealed that decision.

that res judicata did not bar any claims arising "from the lease termination" related to a fiber optic network installed by eCBI. On remand, Plaintiffs amended their fourth complaint, and the City moved to dismiss the amended claims, including Plaintiffs' request for mandamus and claims for inverse condemnation and nuisance. The trial court granted the motion, leaving only eCBI's breach of contract claim and request for an injunction pending below.[2] Plaintiffs appeal, and for the reasons that follow, we affirm in part and reverse in part.

As summarized in *eCBI I*,

in 2017, Plaintiffs and the City defendants entered into an agreement for the creation of a 25-mile fiber optic wide area network consisting of two components: (1) the governmental wide area network ("the government WAN") and (2) the private use wide area network ("the private WAN"). The government WAN would be exclusively used by the City of Warner Robins and would consist of six to twelve physical fiber lines, network equipment, and a network operations center connecting City Hall with City agencies, departments, and facilities. The private WAN would be operated by Plaintiffs as a "for-profit business that provides 'wholesale' services. . . ." The agreement further provided that upon completion, Plaintiffs would sell the government WAN to the City for

---

[2] Because A2D, Inc., was not a party to the lease, it no longer has claims pending in the trial court.

$2.5 million, and the private WAN to the City's Development Authority for $100,000. The Development Authority agreed to lease the private WAN back to [eCBI].[3]

According to Plaintiffs, 72 fiber optic lines were installed; the City and the Development Authority each bought 12 lines. The Development Authority leased its 12 lines back to [eCBI], for a period of 99 years. A dispute arose over the remaining 48 fiber optic lines — lines seemingly not addressed by the parties' agreement. Plaintiffs sought permits to access the lines and when the permits were not issued, Plaintiffs filed a petition for a writ of mandamus against the City defendants in the Superior Court of Houston County in October 2020. According to Plaintiffs' petition, they have to "obtain right of way access permits from . . . [the] City" in order to "access their fiber and conduit assets in the public [right of way]" and "install new fiber and conduit assets in the public [right of way] to end-user customers."[4]

In April 2021, Plaintiffs filed a second lawsuit against the City defendants in federal court, alleging that they violated

> Plaintiffs' rights under the First, Fifth, and Fourteenth
> Amendments of the United States Constitution and their
> rights secured by Georgia law . . . by unjustly, arbitrarily,

---

[3] *eCBI I*, 370 Ga. App. at 1-2

[4] Id. at 2.

and capriciously refusing to issue right-of-way permits to Plaintiffs on city property so that Plaintiffs could access and utilize the personal property owned by eCBI consisting of in-ground conduit containing forty-eight (48) fiber optic fibers . . . [and] by publishing unequivocally untrue . . . and willfully misleading statements with the specific intent to damage [Plaintiffs'] reputations solely predicated upon racial prejudice and animus[.][5]

Plaintiffs alleged, inter alia, property rights violations based on the taking of the fiber optic lines and conduit without due process by "arbitrarily and capriciously refusing to issue permits to Plaintiffs"; economic rights violations based on the frustration of Plaintiffs' ability to enter contracts to use the fiber optic lines and conduit by advising others "not to do business with [Plaintiffs]"; a state law conversion claim based on Plaintiffs' statutorily protected right to use and access the fibers and conduit and the City defendants' intent to deprive Plaintiffs of their property by confiscating all 72 of the fiber lines and refusing to issue right of way permits to Plaintiffs. In August 2021, the Development Authority was dissolved by resolution of the Warner Robins mayor and city council.[6]

---

[5] Id. at 2.

[6] Id. at 2-3.

Plaintiffs dismissed with prejudice their claims against the individual defendants in federal court, as reflected in a May 2, 2022 order. On the following day, Plaintiffs voluntarily dismissed all remaining claims with prejudice. Two months later, on July 5, 2022, the City terminated the lease agreement between the Development Authority and [eCBI] for the private WAN.[7]

In July 2022, the City defendants moved for summary judgment in superior court, contending that Plaintiffs' claims were barred by res judicata following the voluntary dismissal with prejudice in federal court. One month later, Plaintiffs amended their complaint to include facts/claims based on the July 2022 termination of the lease, ultimately seeking appointment of a receiver, a permanent injunction, and a writ of mandamus and asserting claims for inverse condemnation, breach of contract, nuisance, and expenses of litigation pursuant to OCGA §§ 13-6-11 and 9-15-14.3. Following a hearing in September 2022, the trial court granted summary judgment in favor of the City defendants, concluding that all of Plaintiffs' claims are barred by res judicata.[8]

On appeal, this Court concluded that

res judicata does not bar any claims arising from or relating to the termination of the lease between [eCBI] and the Development Authority for the 12 fiber lines comprising the private WAN. Nor does it bar

---

[7] Id. at 3.

[8] Id. at 3.

Plaintiffs' claim for a writ of mandamus, whether it pertains to the private WAN fiber lines or the 48 fiber lines. Plaintiffs' remaining claims, however, are barred. Plaintiffs are precluded from asserting any remaining claims concerning the 48 fiber lines.[9]

On remand, Plaintiffs amended the Fourth Amended Complaint, alleging as to the inverse condemnation claim that

> [t]he City created a nuisance or another condition that amounts to a taking of eCBI's property interest under the 99-year lease without compensation. . . . The City took affirmative public action for public purposes which caused a nuisance to eCBI when it voted on July 5, 2022 to terminate eCBI's 99-year Lease with [the Development Authority], all without justification. Accordingly, eCBI has a right to recover damages for the City's interference with eCBI's quiet enjoyment of all monetary and other benefits under the Lease for the full market enterprise value of the 12-fiber system in an amount to be proven at trial.

And as to its nuisance claim, Plaintiffs alleged that

> [b]y seizing eCBI's property interests under the 99-year Lease and refusing to return it those interests, despite being put on notice that it must do so, the City created a continuous condition that harms eCBI. . . . Accordingly, eCBI has a right to recover damages for the City's interference with the Lease with [the Development Authority] and for

---

[9] Id. at 9-10 (d) (iii).

its trespass against eCBI's leased assets, as well as for the loss of its quiet enjoyment of the assets under Lease, including monetary and other benefits, representing the full market enterprise value of the 12-fiber system in an amount to be proven at trial.

In the mandamus claim, Plaintiffs argued that

[i]f there is no other specific remedy for eCBI's legal rights, the Court should issue a Writ of Mandamus under OCGA § 9-6-20, compelling the City, Mayor, and Councilmembers to faithfully perform their official ministerial duties. The City's, Mayor's, and Councilmembers' failure to perform or improper performance of their official duties has created a defect of legal justice. The Court should therefore issue a Writ of Mandamus compelling the City, Mayor, and Councilmembers to acknowledge that eCBI owns 48 fibers, that eCBI has a valid and enforceable 99-year lease for 12 other fibers owned by [the Development Authority], and that they must stop depriving eCBI of access to its property through the denial of ROW permits.

The trial court dismissed Plaintiffs' amended claims for nuisance and inverse condemnation on the basis that the claims did not arise from termination of the lease and simply restated previous claims that this Court had determined were barred by res judicata. The court also dismissed the mandamus claims because Plaintiffs failed to allege that the City had a clear legal duty to perform (1) regarding acknowledgment

that the Plaintiffs had an ownership interest in the fibers, (2) regarding acknowledgment that the lease was valid and enforceable, or (3) regarding providing access to the property to Plaintiffs. This appeal followed.

1. Plaintiffs argue that the trial court erred by dismissing their claims for nuisance and inverse condemnation arising from the lease termination because this Court's opinion in *eCBI I* determined that the claims were not barred by the doctrine of res judicata. We agree, in part.

"On appeal, a trial court's ruling on a motion to dismiss for failure to state a claim for which relief may be granted is reviewed de novo."[10]

In our prior ruling (aside from the separate ruling on the issue of mandamus), this Court did not specify which individual claims remained for Plaintiffs going forward; instead, we explained that any claims must arise from or be related to the lease termination regarding the 12 fiber private WAN. On remand, the trial court found that Plaintiffs had not stated new claims that arose from or were related to the

---

[10] *Abramyan v. State of Ga.*, 301 Ga. 308, 309-310 (800 SE2d 366) (2017). See also *Southeast Ga. Health System, Inc. v. Berry*, 362 Ga. App. 422 (868 SE2d 820) (2022) (reviewing dismissal of a petition for mandamus relief), citing *Hildebrand v. City of Warner Robins*, 354 Ga. App. 164 (840 SE2d 503) (2020).

lease termination, finding instead that the lease termination did not constitute a new and separate taking based on any act by the City prior to the end of the federal lawsuit.

(a) *Inverse Condemnation.*

An inverse condemnation claim arises when the governmental entity creates a condition on private property that amounts to a taking without compensation. To state a claim for inverse condemnation, the property owner does not have to show a physical invasion that damages the property, but only an unlawful interference with the owner's right to enjoy the land.[11]

Although Plaintiffs failed to present any law on this matter, we note that "private property" in the context of a taking (of which inverse condemnation is a type) is broader than real property or interests therein.[12] The claimant must show that they have been deprived "of a protected property interest."[13] Georgia courts have

---

[11] (Citations and punctuation omitted.) *Rouse v. City of Atlanta*, 353 Ga. App. 542, 548 (2) (c) (839 SE2d 8) (2020), quoting *City of Tybee Island v. Live Oak Group, LLC*, 324 Ga. App. 476, 478 (751 SE2d 123) (2013); *Solid Equities, Inc. v. City of Atlanta*, 308 Ga. App. 895, 897 (2) (710 SE2d 165) (2011).

[12] *Abramyan*, 301 Ga. at 310.

[13] Id. (noting "an occupational or business license — once secured — can become a protected property right"), citing *Goldrush II v. City of Marietta*, 267 Ga. 683 (7) (482 SE2d 347) (1997). Compare *Howard v. Gourmet Concepts Intl., Inc.*, 242 Ga. App. 521, 524 (3) (529 SE2d 406) (2000) (holding that "personal injury . . . for

recognized that "[a] leasehold interest is 'property' for which the leaseholder is entitled to receive compensation when his interest is taken or damaged for a public purpose."[14] Moreover, "[a] contract is obviously a property right, and the sort of taking or damaging which poses the constitutional requirement of just and adequate compensation may be any species of property. As property, contracts may be condemned."[15] Thus, the trial court erroneously concluded that the amended claim (for inverse condemnation arising out of the lease termination) could not create a new taking independent of the taking articulated in the federal case.[16] It was premature to

---

purposes of inverse condemnation does not constitute personal property that can be taken").

[14] (Punctuation omitted.) *Outfront Media, LLC v. City of Sandy Springs*, 356 Ga. App. 405, 417 (2) (847 SE2d 597) (2020), quoting *Bill Ledford Motors v. Dept. of Transp.*, 225 Ga. App. 548, 549 (484 SE2d 510) (1997). See also *Stuttering Foundation v. Glynn County*, 301 Ga. 492, 498 (2) (a) (ii) (801 SE2d 793) (2017).

[15] (Citations omitted.) *DeKalb County v. United Family Life Ins. Co.*, 235 Ga. 417, 419 (219 SE2d 707) (1975). See also *Atlanta v. Airways Parking Co.*, 225 Ga. 173 (167 SE2d 145) (1969).

[16] See *Abramyan*, 301 Ga. at 310. See also *Cleveland v. MidFirst Bank*, 335 Ga. App. 465, 465 (781 SE2d 577) (2016) ("[A]ll pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.") (citation and punctuation omitted).

dispose of the claim at this stage of the proceeding, and we reverse in part the trial court's order as to this claim.

(b) *Nuisance*. The nuisance claim, on the other hand, is another matter.

> To be held liable for maintenance of a nuisance, the municipality must be chargeable with performing a continuous or regularly repetitious act, or creating a continuous or regularly repetitious condition, which causes the hurt, inconvenience or injury; the municipality must have knowledge or be chargeable with notice of the dangerous condition; and, if the municipality did not perform an act creating the dangerous condition the failure of the municipality to rectify the dangerous condition must be in violation of a duty to act.[17]

Plaintiffs cite no case in which a lease termination or breach of contract gives rise to an action in nuisance.[18] "A private nuisance may injure either a person or

---

[17] (Punctuation omitted.) *Gatto v. City of Statesboro*, 312 Ga. 164, 171 (2) (860 SE2d 713) (2021), quoting *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419, 427 (3) (249 SE2d 419) (1978). See also *City of Bowman v. Gunnells*, 243 Ga. 809, 810-811 (256 SE2d 782) (1979) (equating nuisance to pornography in that "it cannot be defined but you know it when you see it").

[18] Compare *Gatto*, 312 Ga. at 168-172 (2) (collecting nuisance cases, including nuisances involving leaking sewers; insufficient drainage; construction or operation of power plants, bridges, airports, and malfunctioning traffic signals); *Bethany Group, LLC v. Grobman*, 315 Ga. App. 298, 302 (2) (727 SE2d 147) (2012) (affirming denial of summary judgment on nuisance claim where the record showed "repeated instances" of prior crimes on the premises); *Scott v. Dudley*, 214 Ga. 565, 567-568 (3)

property, or both, and for that injury a right of action accrues to the person who is injured or whose property is damaged."[19] The act of terminating the lease was a singular event, and not a continuous or repetitive act — nor did it create a defect or dangerous condition on any real property owned by Plaintiffs, the City, or otherwise.[20] Accordingly, we affirm the trial court's dismissal of the nuisance claim because we agree that Plaintiffs cannot, as a matter of law, state a claim of nuisance arising from the City's act of terminating the lease.[21]

2. Plaintiffs also argue that the trial court erred by dismissing their mandamus claim(s). We disagree.

"Mandamus is a remedy for improper government inaction — the failure of a public official to perform a clear legal duty. The writ of mandamus is properly issued

---

(105 SE2d 752) (1958) (nuisance claim for home affected by airplane flight paths); *Davis v. State ex rel. Lanham*, 199 Ga. 839, 842-843 (2) (35 SE2d 458) (1945) (public nuisance created by secondary effects of a disreputable business, including loud music and drunken loiterers cursing, fighting, and making noise).

[19] OCGA § 41-1-4.

[20] See *Gatto*, 312 Ga. at 172-173 (2).

[21] Compare id.; *Rouse*, 353 Ga. App. at 545-546 (1) (reversing summary judgment on a claim for nuisance based on a broken sewer pipe causing damage to plaintiff's real property).

only if (1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief."[22]

> A clear legal right to the relief sought may be found only where the claimant seeks to compel the performance of a public duty that an official or agency is required by law to perform. When performance is required, a clear legal right to relief will exist either where the official or agency fails entirely to act or where, in taking such required action, the official or agency commits a gross abuse of discretion. But where the applicable law vests the official or agency with discretion with regard to whether action is required in a particular circumstance, mandamus will not lie, because there is no clear legal right to the performance of such an act.[23]

In *eCBI I*, this Court determined that any mandamus claim that existed prior to the federal court dismissal was not precluded by the adjudication of that case because

---

[22] (Citation and punctuation omitted.) *Bibb County v. Monroe County*, 294 Ga. 730, 734 (2) (755 SE2d 760) (2014). See also *SJN Properties, LLC v. Fulton County Bd. of Assessors*, 296 Ga. 793, 799-802 (2) (b) (ii) (770 SE2d 832) (2015) (explaining that the plaintiff correctly argued that the defendant had a duty to perform assessments for appraisals properly but finding no right to mandamus because plaintiff failed to present evidence of a violation of that duty); OCGA § 9-6-20 ("[T]he writ of mandamus may issue to compel a due performance if there is no other specific legal remedy for the legal rights[.]").

[23] (Citation and punctuation omitted.). *Dunn v. City of Stonecrest*, 368 Ga. App. 736, 743-744 (2) (890 SE2d 781) (2023), quoting *Bibb County*, 294 Ga. at 735 (2) (b).

the federal court had no power over a mandamus claim.[24] This Court did not address the substance of any of Plaintiffs' requests for mandamus relief. On remand, the trial court characterized the mandamus relief sought by Plaintiffs as (1) acknowledgment of ownership of the fibers; (2) acknowledgment of a valid lease; and (3) the grant of right of way permits.[25]

(a) *48 fiber lines.* As an initial matter, in *eCBI I*, this Court held that "res judicata does not bar . . . Plaintiffs' claim for a writ of mandamus, whether it pertains to the private WAN [12] fiber lines or the 48 fiber lines." Nevertheless, in response to a question from the presiding judge during oral argument in this case, Plaintiffs stated that "all that these remaining claims revolve around [are] these 12 fibers." Arguably, therefore, Plaintiffs have abandoned any mandamus claim for the 48 fiber lines. In any event, we discern no clear legal duty that the City was required to perform regarding acknowledgment that Plaintiffs own the 48 fiber lines.[26] Indeed, the

---

[24] See *eCBI I*, 370 Ga. App. at 5 (b) (i).

[25] Plaintiffs' brief does not argue that the grant of right of way permits are still at issue.

[26] See, e.g., *Dunn*, 368 Ga. App. at 744. See also *Schrenko v. DeKalb County School Dist.*, 276 Ga. 786, 794 (3) (582 SE2d 109) (2003) ("In general, mandamus relief is not available to compel officials to follow a general course of conduct, perform

14

question of ownership was disputed between the parties. Therefore, to the extent that this mandamus claim was not abandoned, the trial court did not err by dismissing it.

(b) *12 fiber private WAN*. Plaintiffs contend that under OCGA § 9-6-25, they can "enforce a private right by mandamus" (i.e., their rights under the lease) because they can "show pecuniary loss for which [they] cannot be compensated in damages" regarding the private WAN. We disagree. The private rights Plaintiffs seek to enforce are its rights under the terms of the lease. Because the breach of lease claim and claim for injunctive relief remain pending below, Plaintiffs have other specific legal remedies available regarding those rights.[27] Moreover, if Plaintiffs cannot establish that the City is liable for breach of the lease, then they would not be able to show a clear legal right to any action by the City, and the mandamus claim would therefore fail. Accordingly, we affirm the trial court's dismissal of this claim.

3. Finally, Plaintiffs filed a supplemental brief requesting this Court to vacate *eCBI I* based on a recent case issued by the United States Supreme Court — *Royal*

---

a discretionary act, or undo a past act.").

[27] See OCGA § 9-6-20. See also *Brissey v. Ellison*, 272 Ga. 38, 40 (526 SE2d 851) (2000) ("Mandamus is not the proper remedy to compel the undoing of acts already done or the correction of wrongs already perpetrated.") (citation and punctuation omitted).

*Canin U.S.A. v. Wullschleger*.[28] In that case, however, the defendant had removed to federal court a complaint alleging federal and state law claims.[29] The plaintiff then amended her complaint, dropping the federal claims.[30] The Supreme Court held that the district court must remand the case to the state court from which the defendant had removed it because the federal court's supplemental jurisdiction to adjudicate any related state law claims vanished upon the dismissal of the federal claims.[31]

Here, the Plaintiffs filed a federal case with state law and federal law claims, and then Plaintiffs dismissed with prejudice the entire federal case.[32] Pretermitting whether we could apply retroactively the holding of *Royal Canin* to provide Plaintiffs with the relief they seek, the holding in that case would not result in saving any state law claims in this instance because it was Plaintiffs' act of dismissing the case that resulted in a final judgment on the merits.[33] The federal court case ended via the

---

[28] 604 U. S. 22 (145 SCt 41, 220 LE2d 289) (2025).

[29] See id. at 28-29 (I) (B).

[30] See id. at 29 (I) (B).

[31] See id. at 29-30 (I) (B) (this holding resolved a split among the circuit courts).

[32] See *eCBI I*, 370 Ga. App. at 3, 5-6 (b) (ii).

[33] See id. at 5 (a).

dismissal with prejudice, which was a final judgment and which simultaneously resulted in preclusion of claims as stated in *eCBI I*.[34] There was no loss of supplemental jurisdiction in the federal court in this instance, so *Royal Canin* does not apply. This is the result regardless of whether Plaintiffs dismissed their state law claims prior to dismissal of the federal case or not. The final judgment in federal court resulted in preclusion of any claims, federal or state, that were asserted in that proceeding or were related to claims asserted therein. Accordingly, this argument is without merit.

*Judgment affirmed in part and reversed in part. Markle and Padgett, JJ., concur.*

---

[34] See id. at 3, 5-6 (b) (ii).